STATE TAX COMMISSIONER, Respondent - Appellant, v. WILLIAM K. CARPENTER, Petitioner - Appellee.

*(May* 7, 1964.)

DUFFY, President Judge, sitting.

*Thomas Herlihy, III,* Chief Deputy Attorney-General, for the Respondent-Appellant.

*Converse Murdoch* (of Berl, Potter and Anderson, of Wilmington) and *Gordon W. Gerber* (of Dechert, Price and Rhoads, of Philadelphia, Pa.) for the Petitioner-Appellee.

Superior Court for New Castle County, No. 1158, Civil Action, 1961.

DUFFY, President Judge:

This is an appeal from a decision of the State Tax Board. The facts are summarized in an opinion filed by Chief Justice Terry while sitting in this Court, Del.Super., 189 A.2d 411 (April 1, 1963):

"On January 19, 1954, William K. Carpenter, a cash basis taxpayer, purchased a single premium annuity policy from the Old Republic Credit Life Insurance Company. The amount of the premium was $500,000. At the time of

the purchase Carpenter was thirty-four years of age.

"The chief obligation of Old Republic was to commence to pay to Carpenter monthly amounts of $10,371.32 when he attained the age of 69 years (January 19, 1989). There were also additional income options. In the event Carpenter died prior to the commencement of any income settlement, or prior to payment to him of the cash value of the policy, the single premium paid or the cash value at the time of his death, whichever was greater, less any indebtedness or advances, was to be paid to his wife.

"Carpenter paid his single premium in the following manner. He paid $8,000 cash from his personal funds. On January 25, 1954, he borrowed $492,000 from the Philadelphia National Bank on a demand note secured by the annuity policy. The bank paid this amount directly to Old Republic, thus liquidating the balance due on the premium. On the same day Carpenter borrowed $492,000 from Old Republic through the use of an annuity loan agreement. Old Republic paid the amount so borrowed to the Philadelphia National Bank, thus liquidating Carpenter's indebtedness to the bank. The annuity loan agreement between Carpenter and Old Republic contained a provision whereby no personal liability attached to Carpenter, and Old Republic's sole recourse was against the annuity policy which was pledged to it as security.

"On the same day, January 25, 1954, Carpenter paid Old Republic $19,680, which represented interest at 4% for one year on the $492,000 loan. On November 17, 1954, Carpenter paid Old Republic $170,154.33 as prepaid interest. This amount was a payment of an additional seven years interest on the $492,000 loan, plus interest to the end of the eighth year of the policy on an additional $113,000 loan which was consummated four days later.

The additional loan, plus the original loan, represented an amount equal to the full cash surrender value of the annuity policy at the end of the eighth year. The second sum was borrowed on November 24, 1954. On the basis of these figures Carpenter claimed an interest deduction in the amount of $189,834.33."

The State Tax Commissioner disallowed the interest deduction and made a deficiency assessment of $11,389.06. The Tax Board allowed the deduction. The Chief Justice found that the evidence was reasonably sufficient to support a finding that the purchase of the annuity by Carpenter was bona fide, *Raskob v. State Tax Department,* 7 W.W.Harr. 128, 180 A. 785, and he affirmed the Tax Board. But he expressly concluded that the Commissioner had abandoned the contention that the deduction should not be allowed because the interest was not paid in the taxable year, and he therefore did not consider this argument. Upon motion for reargument it developed that the Commissioner had not abandoned this contention. I granted the motion for reargument limited to the sole question which the Chief Justice did not decide. This is the decision thereon after further briefing and oral argument.

Carpenter claims a tax deduction computed as follows:

| | | |
|---|---|---|
| 1 Year interest paid January 25, 1954 | $ 19,680.00 |
| 7 Years interest paid November 17, 1954 | 170,154.33 |
| Total | $189,834.33 |

The Commissioner contends that this amount should be reduced by $113,000 (leaving a net of $76,834.33), which is the amount Carpenter borrowed against the policy on November 24, 1954, seven days after he prepaid seven

years interest. Thus the validity of the deduction of $113,000 is the heart of the dispute.

In affirming the Tax Board the Chief Justice agreed with the principle announced in *Knetsch v. United States,* 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960). In Knetsch the Supreme Court disallowed an interest deduction claimed by a taxpayer on his Federal return under comparable circumstances, that is, arising out of interest paid to buy or carry a single premium annuity. The Court held that the entire transaction was a fiction lacking economic substance. In this case the Chief Justice held that the transaction was not a sham but, rather, was bona fide for reasons set forth in his opinion. I consider this to mean that this Court has determined that the transaction was valid at inception for tax purposes. Since $19,680 was paid in interest at inception, that is, at or about the time the policy was issued and the loan made, this implicitly includes a finding that that sum · was a permissible tax deduction under Delaware law.

This narrows the issue to the legality of the deduction in the amount of $170,154.33 for interest paid on November 17, 1954. The Commissioner contends that $113,000 of this is not deductible because, considered as a whole, it amounts to no more than a circuitous routing of cash with the result that that amount of prepaid interest was recouped and so what not "paid" within the meaning of the Delaware statute.

Carpenter contends that under the statute interest paid within the income year on a debt is deductible and that two checks productd in evidence before the Tax Board, one in the amount of $19,680 and the other in the amount of $170,154.33, prove that such payment was actually made.

The statute, 30 *Del. C.* § 1118, provides, in part, as

follows:

"In computing net income, the following deductions shall be allowed—

\*     \*     \*     \*     \*     \*     \*

"(2) *Interest paid* or accrued by the taxable *within the income year on his indebtedness*, except interest on indebtedness incurred or continued to purchase or carry securities, the interest on which is exempt from tax under this chapter; \*  \*  \*." (Italic added.)

██ ██ The usual meaning of the term "interest" is the "amount which one has contracted to pay for the use of borrowed money".[1] *Deputy v. DuPont*, 308 U.S. 488, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940). Prepaid interest, even for a long period, is deductible when paid by a cash taxpayer. 3 Rabkin & Johnson, Federal Income Gift and Estate Taxation, § 37.09(3), and cases cited therein.

Is the interest deduction here claimed of such a character, that is, is this an amount which Carpenter paid for the use of borrowed money? This requires a close look at what actually took place.

██ On November 17, 1954 Carpenter prepaid seven years interest on the $492,000 which he had borrowed when the policy was issued. At the same time he prepaid interest over the same period on $113,000. But at this time he had not yet borrowed that sum. He did indeed borrow it some seven days later, but the fact is he was paying interest on money not yet received. Obviously, return of the $113,000 was arranged before the $170,154.33 was paid out. All of this quite clearly shows that both

---

[1] The current instructions issued by the Commissioner state that "interest paid on personal indebtedness" is deductible.

events, the prepayment of interest and the subsequent borrowing, were planned and executed as a single transaction. In short, it was one play divided into two acts, both planned before the first movement was made. Since Carpenter was to get back, in the second act, $113,000 out of the $170,154.33 which he was paying, it is difficult —indeed, legally impossible—to consider the latter sum in its entirety as an amount which Carpenter agreed to pay "for the use of borrowed money". The "prepaid interest" was not so much payment for the use of borrowed money as it was a pump primer to put in circulation money to be returned to Carpenter. And to the extent of $113,000 this is precisely what happened. Carpenter had to prepay the "interest" in order to be in a position to take down the "loan". In short, he had to put in before he could take out; and, for reasons that I have already indicated, the plan to take out was made and acted upon before anything was put in. In my judgment this does not meet the test for deductibility implicitly required under the Delaware statute.

■ I am also of the view that the proximity in time between the prepayment of interest and the subsequent withdrawal by Carpenter, thus resulting in a circuitous routing of cash, shows prima facie that the transaction did not result in a legal deduction of interest; it is therefore incumbent upon Carpenter as the taxpayer to show that the transaction was bona fide and that he is entitled to the deduction claimed. *Vale v. DuPont*, 7 W.W.Harr. 254, 182 A. 668, 103 A.L.R. 946 (Sup.Ct.1936). Considering the record as a whole, it is quite clear that Carpenter failed to do this before the Tax Board. Consequently on this point the evidence is not reasonably sufficient to support a finding by the Tax Board that this particular deduction was bona fide. *Raskob v. State Tax Department*, supra.

In these matters the Court looks to the substance of what took place. While form cannot be ignored, the mere exchange or routing of checks will not provide a substance which is otherwise absent. The decision of the Tax Board is reversed with instructions to disallow Carpenter's deduction for interest to the extent of $113,000.